IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JERRY JAMGOTCHIAN and ERIC REED, ) | CASE NO. 1:16-cv-2344 |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v.  ) | |
| ) | |
| INDIANA HORSE RACING ) | |
| COMMISSION; MIKE SMITH, in his ) | |
| official capacity as Executive Director, ) | |
| Indiana Horse Racing Commission; ) | |
| THOMAS WEATHERWAX, in his official ) | |
| capacity as Chairman, Indiana Horse Racing ) | |
| Commission; GREG SCHENKEL, in his ) | |
| official capacity as Vice Chairman, Indiana ) | |
| Horse Racing Commission; STANLEY ) | |
| BOWKER, in his official capacity as Senior ) | |
| Indiana Thoroughbred Steward; TIM DAY, ) | |
| in his official capacity as Associate Indiana ) | |
| Thoroughbred Steward; WILLIAM ) | |
| TROILO, in his official capacity as ) | |
| Associate Indiana Thoroughbred Steward; ) | |
| and KEVIN GREELY, in his capacity ) | |
| As Racing Secretary for Indiana Downs. ) | |
| ) | |
| ) | |
| Defendants.           ) | |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

The Plaintiffs, Jerry Jamgotchian and Eric Reed, for their Complaint for Declaratory and Injunctive Relief against Defendants, Indiana Horse Racing Commission (the "IHRC"); Mike Smith, in his official capacity as Executive Director, Indiana Horse Racing Commission; Thomas Weatherwax, in his official capacity as Chairman, Indiana Horse Racing Commission; Greg Schenkel, in his official capacity as Vice Chairman, Indiana Horse Racing Commission; Stanley Bowker, in his official capacity as Senior Indiana Thoroughbred Steward; Tim Day, in his official capacity as Associate Indiana Thoroughbred Steward; William Troilo, in his official

capacity as Associate Indiana Thoroughbred Steward; and Kevin Greely, in his capacity as Racing Secretary for Indiana Downs, respectfully state as follows:

## INTRODUCTION

1. The Plaintiffs seek declaratory and injunctive relief as a result of the unconstitutional enforcement of Title 71, IAC §6.5-1-4(i)("Section 4(i)"), which provision of the Indiana Administrative Code provides, in pertinent part, that: "[n]o horse claimed out of a claiming race shall race outside of the State of Indiana for a period of sixty (60) days without the permission of the Stewards and racing secretary, or until the conclusion of the race meet."

2. The effect of Section 4(i) is to make a Thoroughbred horse claimed at a race meet in Indiana ineligible to race outside of Indiana for no less than sixty (60) days and potentially for up to more than six months, through the date of the closing of the race meet. This period of ineligibility is known as "claiming jail" or "jail time" because the owner and trainer of a claimed horse have no freedom to race his or her horse in any other State outside of the State of Indiana until the jail time period has expired.

3. The Plaintiffs seek a Judgment and Order declaring that Section 4(i) is invalid under federal law as it violates the Commerce, the Privileges and Immunities, the Due Process and the Equal Protection Clauses of the United States Constitution, and further enjoining Defendants from taking any action to implement or enforce Section 4(i) against Plaintiffs or any other Indiana horse owners or trainers.

4. The Defendants' conduct in enforcing Section 4(i) has resulted in Plaintiffs suffering lost earnings and foregone business relationships. More specifically, the enforcement of Section 4(i) has precluded Plaintiffs from entering races outside of Indiana and prevented

them from engaging in commerce throughout the United States of America, including but not limited to engaging in racing at Mountaineer Racetrack in West Virginia.

### PARTIES, JURISDICTION AND VENUE

**A.     The Parties**

5.     The Plaintiff, Jerry Jamgotchian ("Jamgotchian") is an individual who resides in the County of Los Angeles in the State of California.  Jamgotchian owns numerous thoroughbred horses throughout the country, including three (3) thoroughbred horses, Majestic Angel, Found a Diamond, and Tiz Dyna, which he has acquired in Indiana claiming races between June 17, 2016 and August 11, 2016.

6.     The Plaintiff, Eric Reed, is an individual who resides in Versailles, Kentucky. Reed is a long-time thoroughbred horse trainer who trains numerous horses throughout the country, including three thoroughbred horses, Majestic Angel, Found a Diamond, and Tiz Dyna, which were acquired in Indiana claiming races between June 17, 2016 and August 11, 2016.

7.     The Defendant, IHRC, is an administrative agency of the State of Indiana overseeing the horse racing industry in Indiana and having its principal place of business in Indianapolis, Indiana.

8.     The Defendant, Mike Smith ("Smith"), is the current Executive Director of the Indiana Horse Racing Commission.  Plaintiffs are informed and believe that Smith's official principal place of business is in Indianapolis, Indiana.

9.     The Defendant, Thomas Weatherwax ("Weatherwax"), is the current Chairman of the Indiana Horse Racing Commission.  Plaintiffs are informed and believed that Weatherwax's official principal place of business is in Indianapolis, Indiana.

10. The Defendant, Greg Schenkel ("Schenkel"), is the current Vice-Chair of the Indiana Horse Racing Commission. Plaintiffs are informed and believe that Schenkel's official principal place of business is in Indianapolis, Indiana.

11. The Defendant, Stanley Bowker ("Bowker"), is the current Senior State Thoroughbred Steward for the State of Indiana and is vested with authority under Section 4(i) to enforce the provisions of that Regulation. Plaintiffs are informed and believe that Bowker's official principal place of business is in this Judicial District.

12. The Defendant, Tim Day ("Day"), is an Associate Thoroughbred Steward for the State of Indiana and is vested with authority under Section 4(i) to enforce the provisions of that Regulation. Plaintiffs are informed and believe that Day's official principal place of business is in this Judicial District.

13. The Defendant, William Troilo ("Troilo"), is an Associate Thoroughbred Steward for the State of Indiana and is vested with authority under Section 4(i) to enforce the provisions of that Regulation. Plaintiffs are informed and believe that Troilo's official principal place of business is in this Judicial District.

14. The Defendant, Kevin Greely ("Greely"), is the Racing Secretary for the Indiana Grand Racetrack and is vested with authority under Section 4(i) to enforce the provisions of that Regulation. Plaintiffs are informed and believe that Greely's official principal place of business is in this Judicial District.

**B.     Jurisdiction and Venue**

15. This Court has jurisdiction over the subject matter of this action, pursuant to 28 U.S.C. §1331, because Plaintiffs' claims arise out of violations of the United States Constitution, more specifically, because Plaintiffs allege that Defendants' enforcement of Section 4(i) violates

the Commerce, the Privileges and Immunities, the Due Process and the Equal Protection Clauses of the United States Constitution.

16.   This Court has personal jurisdiction over Defendants because they reside and do business in the State of Indiana and because Plaintiffs' claims against them arise out of their tortious acts or omissions in the State of Indiana.

17.   Venue is proper in this District because the IHRC is a governmental agency of the State of Indiana headquartered in this Judicial District; because each of the individual Defendants resides within this Judicial District; and because Plaintiffs' claims against Defendants arise out of acts or omissions committed in this Judicial District.

## FACTUAL ALLEGATIONS

18.   Pursuant to IC 4-31-3-8, the Indiana General Assembly has vested the IHRC with plenary power to "prescribe the rules and conditions under which horse racing at a recognized meeting may be conducted."

19.   Jamgotchian and Reed are licensed by the IHRC.  Jamgotchian is the owner of more than 50 thoroughbred race horses in the United States and is currently ranked as one of the leading owners of race horses in the United States with purse earnings in excess of $5,400,000. Reed is the trainer of more than 120 thoroughbred race horses in the United States.

**A.**   **The Nature of Section 4(i).**

20.   In purported exercise of the power described in paragraph 18, *supra*, the IHRC adopted Section 4(i) as an administrative regulation to govern the conduct of thoroughbred claiming races in the State of Indiana.

21. As stated above, Section 4(i) states in pertinent part: "[n]o horse claimed out of a claiming race shall race outside of the State of Indiana for a period of sixty (60) days without the permission of the Stewards and racing secretary, or until the conclusion of the race meet."

22. Because the 2016 Indiana Grand race meet runs from April 19, 2016 through October 29, 2016, Section 4(i) potentially limits the owners' and the trainers' ability to race a claimed horse outside the State of Indiana for a period of more than six (6) months.

23. Alternatively, absent the exercise of discretion by the racing secretary and the Stewards, which discretion appears to be unfettered on the face of Section 4(i), that Section limits the owners' ability to race any Indiana claimed horse outside the State of Indiana for a minimum of sixty (60) days.

24. The effect of Section 4(i) is solely economic; indeed, Stewards Bowker, Day and Troilo specifically advised Jamgotchian that the purpose of the regulation, and the spirit in which they enforced the regulation, was to protect the economic interests of Indiana racetracks to control their horse inventory. Moreover, Section 4(i) is drafted and enforced in a manner designed to discourage and restrict commerce outside the State of Indiana in a manner which is unreasonable and eliminates the owners' and the trainers' freedom and constitutionally granted right to race his or her Indiana claimed horse in any other State (besides Indiana) during the jail time period.

**B.     Section 4(i), as Drafted and as Enforced, Impermissibly Bars Plaintiffs from Racing in West Virginia and Other States.**

25. On June 17, 2016, Jamgotchian claimed the horse Majestic Angel for $25,000 in a claiming race at Indiana Grand in Shelbyville, Indiana.

26. Based on direction given by Indiana Grand's Assistant Racing Secretary that Majestic Angel was cleared to race on July 17, 2016 at Mountaineer Racetrack in Chester, West

Virginia, Majestic Angel's entry was accepted and approved by the West Virginia Stewards. Majestic Angel placed second in that race and earned a purse of $3,240.00.

27.     Shortly after the July 17, 2016 race, Day, on behalf of the Indiana Stewards, advised the West Virginia Stewards that, contrary to what the Assistant Racing Secretary has told them, Majestic Angel was not cleared to race outside of Indiana.  As a result of this advice by Day, and based on a West Virginia regulation that purports to prohibit racing in West Virginia that is violative of another State's claiming rule and jail time restrictions, the West Virginia Racing Commission cited Jamgotchian, as Majestic Angel's owner, and Reed, as Majestic Angel's trainer, for violating Indiana's Section 4(i) and they issued a Notice of Hearing to Jamgotchian and Reed which subjects them to potential fines and/or revocation of their licenses to race in West Virginia.

28.     On August 3, 2016, Jamgotchian claimed the horse Found a Diamond in a claiming race at the Indiana Grand Racetrack.

29.     By his request dated August 21, 2016, Jamgotchian requested permission from Greely, as Indiana's racing secretary, to allow Found a Diamond to race outside of Indiana within the sixty (60) day time limit and before the end of the race meet.  As noted in Jamgotchian's request, Greely and the Indiana Stewards had allegedly granted such permission to other owners who had claimed horses at Indiana Grand in 2016.

30.     On August 23, 2016, Greeley responded to Jamgotchian's request, stating that Greely would only grant Jamgotchian the permission to race Found a Diamond outside of Indiana during the jail time period if Found a Diamond were to run in a Stakes race.

31.     Thereafter, on August 26, 2016, Jamgotchian contacted Stewards Bowker, Day and Troilo, seeking their permission to run Found a Diamond in a non-Stakes race outside of

7

Indiana during the jail time period under Section 4(i).  Stewards Bowker, Day and Troilo denied this request stating, *inter alia*, that they would only grant the requested permission if Found a Diamond were to race in a Stakes race outside of Indiana.  Stewards Bowker, Day and Troilo further stated, in their response to Jamgotchian, that Defendants had enforced Section 4(i) to allow horses claimed in Indiana to race in Stakes races outside of Indiana within the jail time period without any prior permission even though the language of the regulation did not provide for any Stakes race exception.

32. On August 11, 2016, Jamgotchian claimed the horse Tiz Dyna in a claiming race at the Indiana Grand Racetrack.

33. By his request dated August 21, 2016, Jamgotchian requested permission from Greeley, as Indiana's racing secretary, to allow Tiz Dyna to race outside of Indiana within the sixty (60) day time limit and before the end of the race meet.  As noted in Jamgotchian's request, Greely and the Indiana Stewards had allegedly granted such permission to other owners who had claimed horses at Indiana Grand in 2016.

34. On August 23, 2016, Greeley responded to Jamgotchian's request, stating that Greely would only grant Jamgotchian the permission to race Tiz Dyna outside of Indiana during the jail time period if Tiz Dyna were to run in a Stakes race.

35. Thereafter, on August 26, 2016, Jamgotchian contacted Stewards, Bowker, Day and Troilo, seeking their permission to run Tiz Dyna in a non-Stakes race outside of Indiana during the jail time restricted period under Section 4(i).  Stewards Bowker, Day and Troilo denied this request stating, *inter alia*, that they would only grant the requested permission if Tiz Dyna were to race in a Stakes race outside of Indiana.  Stewards Bowker, Day and Troilo further stated, in their response to Jamgotchian, that Defendants had enforced Section 4(i) to allow

horses claimed in Indiana to race in Stakes races outside of Indiana within the jail time period without any prior permission even though the language of the regulation did not provide for any Stakes race exception.

36. Despite Plaintiffs' requests to the IHRC, to the Racing Secretary and to the Indiana Stewards that they reconsider the unconstitutional application of Sections 4(i) against Plaintiffs, the Defendants wrongfully declined to investigate the constitutional validity of such enforcement, thereby preventing Plaintiffs from entering Found a Diamond or Tiz Dyna in any race outside of Indiana.

37. The promulgation of Section 4(i) by the IHRC and the enforcement of that Section by the individual Defendants is an unconstitutional violation of Jamgotchian's rights as a horse owner, Reed's rights as a horse trainer and of Plaintiffs' rights as citizens of the United States of America.

38. The enforcement of Section 4(i) against Majestic Angel has cost Jamgotchian his $3,240 purse and has subjected Jamgotchian and Reed to costs of many additional thousands of dollars in responding to the Notice of Hearing issued by the West Virginia Horse Racing Commission. Moreover, Plaintiffs will be unable to race Majestic Angel, Found a Diamond and Tiz Dyna outside of the State of Indiana during the remainder of the jail time period without subjecting themselves to potential sanctions by Indiana's racing authorities for violating Section 4(i), thereby costing them additional thousands of dollars in lost earnings.

39. Both the plain terms and practical effect of Section 4(i) has resulted in the denial of Plaintiffs' right to race their horses or to engage in commerce within the Commonwealth of West Virginia or any other State in the United States (other than Indiana) between June 17, 2016 and October 29, 2016; has impermissibly created differential treatment of in-state and out-of-

9

state racing interests that unfairly benefits the in-state racing interests and burdens the out-of-state racing interests; and which has the unlawful effect of asserting extra territorial jurisdiction over the Plaintiffs and all Indiana owners and trainers by barring them from engaging in commerce outside of the State of Indiana.

40.     The Commerce Clause of the United States Constitution precludes the extra territorial application of a State's administrative rules or regulations that has the effect of disrupting or eliminating commerce that takes place wholly outside of the State's borders and of discriminating in its regulation of commerce, by favoring in-state out over out-of-state race tracks.

**C.  Section 4(i) Chills Plaintiffs From Engaging in Commerce Outside of Indiana and Leads to Conspiracy with Other Racing Jurisdictions to Enforce Unconstitutional Laws.**

41.     Plaintiffs currently wish to claim additional horses in the State of Indiana and race those horses outside the State of Indiana immediately after the claim in a non-Stakes race.

42.     Section 4(i), as currently enforced by the IHRC and the individual Defendants, would bar Plaintiffs from racing any Indiana claimed horses in a non-Stakes race until the restrictive "jail time" period contained in Section 4(i) has expired.

43.     Section 4(i) is vague as to whether Plaintiffs or any other Indiana horse owners or horse trainers would be exposing themselves to fines, suspension or other punishment by the IHRC if Plaintiffs or other owners or trainers raced any Indiana claimed horse in another jurisdiction outside of Indiana during the restrictive "jail time" period.  Based on Plaintiffs' experience in West Virginia, the prospect of fines, suspension or other punishment as a result of Indiana's unconstitutional enforcement of Section 4(i) against Plaintiffs is very real because

IHRC officials are conspiring with West Virginia racing officials to continue conduct which violates U.S. Commerce Clause requirements.

44. Plaintiffs are informed and they allege that Defendants have full knowledge of the unconstitutional nature of Section 4(i), but nevertheless continue to wrongfully and punitively enforce Section 4(i) by threatening Plaintiffs with license suspensions and other penalties as well as conspiring and communicating with other racing jurisdictions, including West Virginia, to prevent the Plaintiffs and other owners and trainers from racing Indiana claimed horses outside of Indiana during the restrictive "jail time" period.

45. Because Section 4(i) is vague concerning the potential for fines and suspensions resulting from failure to comply with Section 4(i), the Plaintiffs hesitate to claim horses in Indiana and race them outside Indiana. This hesitation is based on Plaintiffs' fear of loss of their IHRC licenses, and the imposition of fines, suspension or other IHRC sanctions, as well as by their fear of loss of their licenses in other states who coordinate and conspire with the IHRC and the individual Defendants to enforce Section 4(i) in their states. Plaintiffs' current desire is to continue engaging in commerce at many race tracks both inside and outside of Indiana, and Plaintiffs are therefore being prevented from engaging in such commerce by the vagueness, uncertainty and unconstitutionality of Section 4(i).

46. As IHRC licensees in good standing, Plaintiffs are entitled to challenge the validity of Section 4(i) without risking sanction for violating this Section. Moreover, as vendors and customers of the out-of-State racetracks which have been unconstitutionally discriminated against by virtue of Section 4(i), Plaintiffs have standing to challenge Section 4(i) on Commerce Clause grounds.

47. The practical effect of Section 4(i) is to deny Plaintiffs the right to race Indiana claimed horses outside of Indiana during the jail time period and engage in commerce throughout the United States.

**D. As enforced, Section 4(i) violates the Equal Protection and Due Process rights of Plaintiffs and Indiana horse owners and trainers.**

48. As set forth *infra,* Section 4(i) precludes owners who claim thoroughbred horses in Indiana from racing the claimed horse in races outside of Indiana.

49. However, while nothing in the administrative provisions provides for any exception, the IHRC and the individual Defendants have enforced Section 4(i) in such way as to create an exception, not contained in the Indiana Administrative Code, for horses claimed in Indiana claiming races to be able to race in a Stakes race outside of Indiana during the jail time period.

50. By virtue of the IHRC's and the individual Defendants' discriminatory and arbitrary enforcement of Section 4(i), thoroughbred owners and trainers such as the Plaintiffs who seek to race Indiana claimed horses in non-Stakes races outside of Indiana, are subjected to discriminatory, arbitrary and increased burdens on their right and ability to race their horses outside of the State of Indiana.

51. Section 1 of the Fourteenth Amendment to the United States Constitution commands that ". . . [n]o State . . . shall deny to any person within its jurisdiction the equal protection of the laws."

52. Section 1 of the Fourteenth Amendment to the United States Constitution further commands that ". . . [no] State . . . shall…deprive any person of life, liberty, or property, without due process of law…"

53. The more stringent restrictions imposed on horse owners and trainers under Section 4(i) who seek to run Indiana claimed horses outside of Indiana in non-Stakes (rather than Stakes races) is without a rational basis and discriminatory, as a class, against owners who claim thoroughbred horses at claiming races in Indiana and wish to race their horses in non-Stakes races outside of Indiana. Accordingly, Defendants have violated the Equal Protection Clause and the Due Process Clause of the United States Constitution with respect to the Plaintiffs and other owners and trainers who have claimed horses in Indiana and sought to race them in non-Stakes races outside of Indiana. Section 4(i) as enforced, is therefore invalid and unenforceable, and it violates the Equal Protection and the Due Process Clauses contained in the Fourteenth Amendment to the United States Constitution.

## **COUNT I**

### **(Declaratory Judgment)**

54. The Plaintiffs set forth and incorporate the allegations of Paragraphs 1- 53 of the Complaint as if fully set forth herein.

55. The Commerce Clause of the United States Constitution gives Congress the exclusive right to "regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." Art. I, § 8 cl. 3. This grant of power to the Congress prohibits states from regulating interstate commerce.

56. The Supreme Court of the United States has specifically stated that the "Commerce Clause precludes the application of a state statute to commerce that takes place wholly outside the State's borders, whether or not the commerce has effects within the State." *Healy v. Beer Institute*, 491 U.S. 324, 336 (1989) (citing *Edgar v. MITE Corp.*, 457 U.S. 624, 642-643 (1982).

57. Moreover, the Supreme Court of the United States has specifically stated that State regulations, like Section 4(i), that provide for differential treatment of in-state and out-of-state economic interests (racetracks) that benefit the former and burden the latter are virtually *per se* invalid and must be strictly scrutinized to insure that they serve a legitimate local purpose that cannot be adequately served by reasonable non-discriminatory alternatives. *Oregon Waste Systems v. Dep't of Environmental Quality of Oregon*, 511 U.S. 93, 99 (1994).

58. Section 4(i) violates the Commerce Clause of the United States Constitution in that, by its plain terms, it has the effect of controlling or preventing commercial activity occurring wholly outside Indiana by prohibiting the owners and trainers of horses claimed in Indiana to race his or her horse in any other State until after the close of the Indiana race meet at which it was claimed (which meet lasts for at least six (6) months), or at the minimum, for sixty (60) days after the horse is claimed and by requiring Indiana claimed horses to only race in Indiana and not at any out-of-State racetracks during the restricted "jail time" period.

59. The Defendants enforce Section 4(i) in a manner that impermissibly regulates matters occurring wholly in interstate commerce and outside the borders of the State of Indiana, and that impermissibly favors in-state economic interests over out-of-state economic interests, and in so doing discriminate against and interfere with commerce occurring outside the borders of Indiana.

60. The Defendants enforce Section 4(i) in an arbitrary and capricious manner that discriminates against owners and trainers wishing to race their Indiana claimed horses outside of Indiana in non-Stakes races.

61. Section 4(i) unreasonably burdens the instrumentalities and flow of interstate commerce by imposing unreasonable burdens and restrictions on interstate commerce which far outweigh any local benefits of the regulation.

62. Section 4(i) violates the Commerce Clause of the United States Constitution and is void.

63. The Defendants have acted and continue to act unlawfully by applying Section 4(i) to commerce conducted by Plaintiffs that would occur wholly outside the borders of the State of Indiana. The IHRC and its agents, including the individual Defendants, have repeatedly stated to Plaintiffs that they will continue to enforce Section 4(i), an unconstitutional administrative regulation, against them.

64. Pursuant to Rule 57, Fed. R. Civ. P. and 28 U.S.C. §2201, an actual and justiciable controversy exists between Plaintiffs and Defendants concerning the constitutionality of Section 4(i), and the Defendants' actions in applying Section 4(i) to commerce taking place outside Indiana.

65. Accordingly, Plaintiffs are entitled to a Declaration that Section 4(i) is unconstitutional and therefore void, and hereby respectfully requests that the Court issue such a Declaratory Judgment.

66. Plaintiffs are also entitled to a Declaration that Section 4(i) deprives Plaintiffs and other horse owners and trainers in Indiana of the rights, privileges, and immunities provided to them by federal law pursuant to 42 U.S.C. §1983, and hereby respectfully requests that the Court issue same and uphold Plaintiffs' Commerce Clause rights.

67. Finally, Plaintiffs are entitled to a Declaration that Section 4(i) violates Plaintiffs' and other Indiana horse owners' rights under the Equal Protection Clause and the Due Process Clause of the United States Constitution and is therefore void.

## COUNT II

### (Injunctive Relief As To All Defendants For Violation Of The Commerce Clause)

68. The Plaintiffs set forth and incorporate the allegations of Paragraphs 1 – 67 of the Complaint as if fully set forth herein.

69. As set forth *supra*, the Defendants have acted and continue to act unlawfully by applying Section 4(i) to commerce conducted by Plaintiffs that would occur wholly outside the borders of the State of Indiana and by discriminating against out of State racetracks for the benefit of in-State racetracks in its differential treatment of the two.

70. Accordingly, Plaintiffs are entitled to temporary, preliminary, and permanent injunctive relief to restrain Defendants from interpreting and applying Section 4(i) in a manner that violates the Commerce Clause.

71. Plaintiffs have been forced to retain the undersigned law firm to protect their rights with respect to this claim and are obligated to pay a reasonable fee for such representation.

## COUNT III

### (Injunctive Relief For Violation Of 42 U.S.C. §1983)

72. The Plaintiff sets forth and incorporates the allegations of Paragraph 1- 71 of the Complaint as if fully set forth herein.

73. Section 4(i) violates the Commerce Clause of the United States Constitution and therefore deprives Plaintiff of the rights, privileges, and immunities secured to him by the Constitution and laws of the United States in violation of 42 U.S.C. §1983.

74. Section 4(i), as enforced by Defendants, violates the Due Process Clause and the Equal Protection Clause of the United States Constitution in violation of 42 U.S.C. §1983.

75. Defendant Smith, acting in his official capacity as Executive Director of the IHRC to enforce Section 4(i), is a person acting under color of state law within the meaning of 42 U.S.C. §1983 and is amenable to suit for prospective injunctive relief.

76. Defendant Weatherwax, acting in his official capacity as Chairman of the IHRC to enforce Section 4(i), is a person acting under color of state law within the meaning of 42 U.S.C. §1983 and is amenable to suit for prospective injunctive relief.

77. Defendant Schenkel, acting in his official capacity as Vice-Chair of the IHRC to enforce Section 4(i), is a person acting under color of state law within the meaning of 42 U.S.C. §1983 and is amenable to suit for prospective injunctive relief.

78. Defendant Bowker, acting in his official capacity as Senior Indiana Thoroughbred Steward to enforce Section 4(i), is a person acting under color of state law within the meaning of 42 U.S.C. §1983 and is amenable to suit for prospective injunctive relief.

79. Defendant Day, acting in his official capacity as Associate Indiana Thoroughbred Steward to enforce Section 4(i), is a person acting under color of state law within the meaning of 42 U.S.C. §1983 and is amenable to suit for prospective injunctive relief.

80. Defendant Troilo, acting in his official capacity as Associate Indiana Thoroughbred Steward to enforce Section 4(i), is a person acting under color of state law within the meaning of 42 U.S.C. §1983 and is amenable to suit for prospective injunctive relief.

81. Defendant Greely, acting in his official capacity as Racing Secretary to enforce Section 4(i), is a person acting under color of state law within the meaning of 42 U.S.C. §1983 and is amenable to suit for prospective injunctive relief.

82. Plaintiffs are therefore entitled to preliminary and permanent injunctive relief against the Defendants which prevents the implementation and enforcement of Section 4(i).

83. Plaintiffs have been forced to retain the undersigned law firm to protect their rights with respect to this claim and is obligated to pay a reasonable fee for such representation.

WHEREFORE, the Plaintiffs respectfully request Judgment on the Complaint herein as follows:

A. For entry of a Declaratory Judgment against the Defendants declaring that Section 4(i) violates the Commerce Clause and Equal Protection and Due Process Clauses of the United States Constitution;

B. For entry of a Declaratory Judgment against the Defendants declaring that Defendants' application and enforcement of Section 4(i) violates the Commerce Clause and Equal Protection and Due Process Clauses of the United States Constitution and deprives Plaintiffs of their rights, privileges and immunities under 42 U.S.C. § 1983;

C. For a permanent injunction barring the Defendants from applying or enforcing Section 4(i) against the Plaintiffs and all other horse owners and trainers licensed by the IHRC;

D. For a permanent injunction barring the Defendants from taking retaliatory actions against Plaintiffs in response to Plaintiffs filing this action;

E. A speedy hearing for Plaintiffs' Declaratory Judgment Action and a calendar advancement of same as allowed by Fed. R. Civ. P. 57;

F. That the Plaintiffs recover the costs and disbursements of this action, including all reasonable attorneys' fees as provided by law; and

G.   Such other and further relief to which Plaintiffs appear entitled.

FROST BROWN TODD LLC

By: */s/Alan S. Brown*
Alan S. Brown, #3536-49
201 N. Illinois St., Suite 1900
P.O. Box 44961
Indianapolis, IN  46244-0961
317-237-3800
Fax: 317-237-3900
abrown@fbtlaw.com

Attorneys for Plaintiffs

0123749.0592279   4827-4183-6087v1