# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| **JERRY JAMGOTCHIAN, et al.,** ) | |
| ) | |
|   Plaintiffs, ) | |
| ) | |
|     vs. ) | Cause No. 1:16-cv-2344-WTL-TAB |
| ) | |
| **INDIANA HORSE RACING COMMISSION,** ) | |
|   et al., ) | |
| ) | |
|   Defendants. ) | |

## ENTRY ON MOTIONS FOR SUMMARY JUDGMENT

This cause is before the Court on the parties' cross–motions for summary judgment (Dkt. Nos. 16, 32). The motions are fully briefed and the Court, being duly advised, **GRANTS** the Plaintiffs' motion and **DENIES** the Defendants' motion for the reasons set forth below.

## I.     BACKGROUND

The relevant facts in this case are undisputed, and the parties agree that the resolution hinges on issues of law. A claiming race is "a race in which any horse starting may be claimed (purchased for a designated amount)." 71 Ind. Admin. Code 1.5-1-21. In other words, each horse in a given race can be claimed—or purchased—for an amount that is posted before the race. The person who wants to claim the horse must do so at least fifteen minutes before the race's post time. Any prize money goes to the previous owner. Each horse in a particular race posts for roughly the same price, which dissuades owners from entering strong horses to compete against a weaker field because they risk losing a horse for less than it is worth. This leveling of the field helps to ensure interesting, competitive races and fosters greater excitement for the local horse racing market. Through claiming races, owners have an effective way of buying and selling

horses, while racetracks enjoy a consistent stable of horses to race. More races of better quality leads to higher gambling revenues and a stronger industry.

A claiming race typically consists of six to nine horses. In 2016, there were approximately 494 claiming races in Indiana, and 144 of these races involved a claiming price of $20,000 or higher. A licensed owner may claim any horse that races in a claiming race, but a person cannot claim his own horse or any horse in which the person has a financial or beneficial interest as an owner or trainer.

Indiana, like other states, has implemented rules to regulate claiming races, including 71 Ind. Admin. Code 6.5-1-4. Section 4(h) establishes what is colloquially known as "claiming jail," which is a temporary limitation on where owners may race newly claimed horses: "No horse claimed out of a claiming race shall race outside of the state of Indiana for a period of sixty (60) days without the permission of the stewards and racing secretary, or until the conclusion of the race meet."[1]

Section 4(h) has been interpreted by the stewards and the Indiana racing secretary as prohibiting the racing of a claimed horse outside the state of Indiana for a period of sixty days or until the conclusion of the race meet, whichever is less. Additionally, Section 4(h) allows horses claimed in Indiana to be raced outside of Indiana within sixty days if the Indiana stewards and the racing secretary grant permission to the owner who claimed the horse. Such permission has been granted on occasion in the past, but only to allow claimed horses to race in stakes races.[2]

---

[1] This language previously was found at Section 4(i); as such, the parties' briefs refer to that section as the challenged regulation.

[2] Horses that race in stakes races are usually superior to horses raced in a claiming race. Very few horses that are claimed in claiming races are capable of performing well in a stakes race.

Plaintiff Jerry Jamgotchian owns more than fifty thoroughbred horses throughout the country. On June 17, 2016, Jamgotchian claimed the horse Majestic Angel for $25,000 in a claiming race at Indiana Grand in Shelbyville, Indiana. Jamgotchian then entered Majestic Angel into a July 17, 2016, race at Mountaineer Racetrack in Chester, West Virginia. Shortly after that race, Indiana steward Tim Day became aware that Jamgotchian had raced Majestic Angel in West Virginia. Day informed the West Virginia stewards that Majestic Angel was not cleared to race outside Indiana because it had been fewer than sixty days since Majestic Angel was claimed in an Indiana claiming race and Majestic Angel had not been granted permission by the Indiana stewards and the racing secretary.

On August 3, 2016, Jamgotchian claimed the horse Found a Diamond in a claiming race at the Indiana Grand Racetrack. On August 11, 2016, Jamgotchian claimed the horse Tiz Dyna in a claiming race at the Indiana Grand Racetrack. On August 26, 2016, Jamgotchian called the Indiana stewards seeking permission to run Found a Diamond and Tiz Dyna in a non-stakes race outside of Indiana. Each horse was still in claiming jail, as Jamgotchian had not had either for sixty days. The Indiana stewards denied Jamgotchian's request.

## II.  DISCUSSION

The Plaintiffs claim that the "claiming jail" established by Section 4(h) violates the dormant Commerce Clause and seek declaratory and injunctive relief.

The Commerce Clause gives Congress the power to regulate commerce "among the several States." U.S. Const. art. I, § 8, cl. 3; *see Gibbons v. Ogden*, 22 U.S. 1, 9 Wheat. 1, 6 L.Ed. 23 (1824); *Willson v. Black Bird Creek Marsh Co.*, 27 U.S. 245, 2 Pet. 245 (1829). While the clause expressly grants power to Congress, it also has an implicit or "dormant" dimension: "Although the Clause thus speaks in terms of powers bestowed upon Congress, the Court long

3

has recognized that it also limits the power of the States to erect barriers against interstate trade." *Lewis v. BT Inv. Managers, Inc.*, 447 U.S. 27, 35 (1980).

When a state directly regulates interstate commerce, it "exceeds the inherent limits of the enacting State's authority and is invalid regardless of whether the statute's extraterritorial reach was intended by the legislature." *Healy v. Beer Inst., Inc.*, 491 U.S. 324, 336 (1989). Courts primarily have been concerned with state regulations that "'benefit in-state economic interests by burdening out-of-state competitors,'" or so-called "'economic protectionism.'" *Dep't of Revenue of Ky. v. Davis*, 553 U.S. 328, 337-38 (2008) (quoting *New Energy Co. of Ind. v. Limbach*, 486 U.S. 269, 273-74 (1988)). "Discriminatory laws motivated by 'simple economic protectionism' are subject to a 'virtually *per se* rule of invalidity.'" *United Haulers Ass'n, Inc. v. Oneida-Herkimer Solid Waste Mgmt. Auth.*, 550 U.S. 330, 338 (2007) (quoting *Philadelphia v. New Jersey*, 437 U.S. 617, 624 (1978)). "[O]nce a state law is shown to discriminate against interstate commerce either on its face or in practical effect, the burden falls on the State to demonstrate both that the statute serves a legitimate local purpose, and that this purpose could not be served as well by available nondiscriminatory means." *Maine v. Taylor*, 477 U.S. 131, 138 (1986) (internal quotation marks and citations omitted).

Accordingly, the Court first must determine whether Section 4(h) discriminates against interstate commerce. *Oregon Waste Systems, Inc. v. Dep't of Envtl. Quality of Oregon*, 511 U.S. 93, 99 (1994). In this context, "'discrimination' simply means differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter. If a restriction on commerce is discriminatory, it is virtually *per se* invalid." *Id.* (citations omitted). The Court finds that, on its face, Section 4(h) discriminates against out-of-state racetracks. By prohibiting horses claimed in Indiana from racing outside of Indiana for a certain period of time—but

4

allowing them to race *within* Indiana during that time—the restriction favors the interests of Indiana racetracks over the interests of racetracks located in other states.[3]

The Defendants put forth several arguments in support of their claim that Section 4(h) is not protectionist discrimination. First, the Defendants argue that Section 4(h) "is part of a larger, non-discriminatory racing regulation, not a trade regulation." Dkt. No. 33 at 10. They point to the duties of the Indiana Horse Racing Commission ("IHRC") to protect horse racing's integrity and promote fairness, and explain that the rules are meant to deter frivolous claims and deter aggressive claiming practices. However, they fail to explain how allowing a horse to race within Indiana but prohibiting it from racing outside of Indiana accomplishes this goal.

Further, the Defendants point to the temporary and limited nature of this prohibition, noting that it applies only to thoroughbred horses purchased through a claiming race. They point out that the maximum time a horse would be in claiming jail is sixty days. The Defendants cite the ten-day hold period on the sale of scrap metal that was at issue in *Tennessee Scrap Recyclers Ass'n v. Bredesen*, 556 F.3d 442, 446 (6th Cir. 2009) to support their argument. In response to metal theft, the City of Memphis passed an ordinance that included a requirement that scrap metal dealers tag and hold purchased metal for ten days. However, as the Sixth Circuit recognized, any effect on out-of-state scrap dealers was a beneficial one to them. *Id.* at 450. The same cannot be said of Section 4(h). Further, the other cases cited by the Defendants do not address any distinction between a permanent and temporary restriction.

---

[3]The Defendants rely heavily on the Kentucky Supreme Court's decision in *Jamgotchian v. Kentucky Horse Racing Commission*, 488 S.W.3d 594 (Ky.), *cert. denied*, 137 S. Ct. 493 (2016). However, Kentucky's regulations prohibit a claimed horse from changing ownership except by claim for thirty days and prohibit the horse from racing at any other track—whether within Kentucky or outside of the state—until the meeting in which he is claimed is terminated. Therefore it does not discriminate in favor of Kentucky on its face; rather, it places Kentucky racetracks and those of other states on the same footing.

5

Next, the Defendants argue that Section 4(h) is a voluntary contractual clause into which the Plaintiffs chose to enter and enjoy the benefits of. The Defendants argue that participants in horse racing, as in other sports, must follow rules and regulations that might be suspect in other circumstances. However, the authority that they cite for the proposition that the voluntary and sports-related nature of the agreement places it outside the reach of the dormant Commerce Clause is related to antitrust claims, not a Constitutional claim such as the one at issue here.

Because Section 4(h) is discriminatory, it must be invalidated unless the Defendants can "sho[w] that it advances a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives." *New Energy Co. of Ind. v. Limbach,* 486 U.S. 269, 278 (1988). Justifications for discriminatory restrictions on commerce must pass the "strictest scrutiny." *Hughes v. Oklahoma,* 441 U.S. 322, 337 (1979). The discrimination must be "demonstrably justified by a valid factor unrelated to economic protectionism." *Wyoming v. Oklahoma*, 502 U.S. 437, 454 (1992).

Here, the Defendants argue that, if the Court finds that Section 4(h) is discriminatory, its purposes could not be achieved with a nondiscriminatory alternative. They point to Indiana's interest in having sufficient horses to fill claiming races, explaining that, prior to the enactment of Section 4(h), owners would claim horses and immediately take them to race in other states. They note the danger that Indiana claims racing would become a purse-bidding war. They also point to the limited time frame of the ban and the fact that surrounding states also restrict where claimed horses can race for specific time periods.

Applying the strict scrutiny standard, the Defendants have not shown that Section 4(h) advances a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives. Rather, they evince the type of economic protectionism that the

dormant Commerce Clause is designed to prevent. Accordingly, they have not met their burden, and the Court finds that Section 4(h) contravenes the dormant Commerce Clause.

### III. CONCLUSION

71 Ind. Admin. Code 6.5-1-4 (h) contravenes the dormant Commerce Clause. Therefore, the Court **GRANTS** the Plaintiffs' motion for summary judgment and **DENIES** the Defendants' motion for summary judgment. The Defendants are enjoined from taking any action to implement or enforce Section 4(h) against the Plaintiffs or any other Indiana horse owners or trainers.

**SO ORDERED: 9/20/17**  _____
Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana


Copies to all counsel of record via electronic communication.